MEYER-BRIDGES COMPANY v. GEORGE T. BADEAU.

[43 South., 609.]

STATUTE OF FRAUDS. *Code* 1906, § 4775 (*a*). *Promise to answer for debt of another.*

A term in a contract of employment whereby a traveling sales-man agreed to bear a percentage of the losses arising from the insolvency of persons to whom he might sell his employer's goods is not a collateral agreement and does not violate the statute of frauds, Code 1906, § 4775 (a), providing that an action shall not be brought whereby to charge a defendant or other party upon any special promise to answer for the debt or default or miscarriage of another person.

FROM the circuit court of Pike county.

HON. MOYSE H. WILKINSON, Judge.

Badeau, the appellee, was plaintiff in the court below; the Meyer-Bridges Company, the appellant, was defendant there. From a judgment in plaintiff's favor defendant appealed to the supreme court.

Plaintiff sued for $119.92 for commissions on sales made by him as defendants' salesman. Appellant's evidence is that it would owe appellee $118.65, if it were not for losses on sales made by appellee to parties who did not pay their accounts, but became bankrupt or died insolvent. The appellant made cross-demand. in the suit for these losses, which exceeded appellee's demand. The evidence was that appellee and Meyer-Bridges Co., a partnership, entered into a written contract for the year 1903 as follows:

"The following agreement, entered into by Meyer-Bridges Co., Louisville, Ky., and G. T. Badeau, Hammond, La.: As compensation for such services we are to allow him hotel and traveling expenses, which are not to exceed $1,200 per annum,

and 50 per cent. of the gross profits made on his sales accepted by us, after deducting the $1,200 for expenses above referred to. He guaranties the gross profits for the year to amount to $4,800. It is also understood and agreed that said G. T. Badeau is to pay 50 per cent. of the losses made by him during the existence of this contract. In addition to the above he is to receive 5 per cent. commission on all brooms, brushes, and mops sold by him for and billed by the Louisville Broom Works. Said compensation to be computed after all freights are deducted. It is understood and agreed that he is to travel such territory as we may designate.

                                    "MEYER-BRIDGES Co."

     "Accepted:   G. T. BADEAU."

It was shown that appellee continued to act as salesman to March, 1905, and that in 1904 one of the partners died; and the corporation, the Meyer-Bridges Company, was organized and continued the business, taking over the assets and assuming the liabilities, of the partnership. Appellant showed that some of the accounts sold by appellee were not paid, but were losses, on account of bankruptcy and insolvency of debtors. Some of these losses were ascertained before the organization of the corporation. Appellee's evidence is that for the year 1904 and the subsequent years there was a verbal contract which made no provision for a division of losses; otherwise, it was practically the same as the written contract for 1903, with a change in commissions for broom sales. The testimony for appellant is that the verbal contracts for 1904 and 1905 were the same as the written contract for 1903, except that the commissions for broom sales were changed; that the written contract, as changed in the matter of broom sales, was verbally adopted for 1904 and 1905.

On the trial in the circuit court the plaintiff's motion to exclude the evidence on the cross-demand of defendant and for a peremptory instruction for the jury to find for the plaintiff the

sum of $118.65 was by the court sustained, and peremptory instruction given for the appellee directing a verdict for plaintiff for $118.65.

*Quin & Williams,* and *F. H. Lotterhoss,* for appellant.

The chief question in this case is whether the stipulation by Badeau as to the losses on customers, with whom he dealt for the appellant, is within the statute of frauds. In other words, should the evidence of losses have been excluded, and the jury instructed peremptorily to find for the appellee? In the solution of this question, we submit, that if Mr. Badeau agreed, for the years 1904 and 1905, to share the losses on sales made by him, such promise was not within the statute of frauds, and was provable by a verbal agreement.

The written contract for 1903, is to the effect, that appellee should be paid fifty per centum of the gross profits, after deducting traveling expenses, and should pay fifty per centum of losses on sales made by him. The appellee testified that for the year 1904, there was a verbal contract, by which he was to receive fifty per centum of gross profits, after deducting traveling expenses, and that this did not include a provision for losses; in fact, that the question of losses was not mentioned, and that he inferred that there had been no losses for 1903. But the testimony of the appellee was controverted by the testimony of several witnesses for appellant, to the effect that the contract between appellant and appellee was by verbal agreement continued for the ensuing year 1904 and on into 1905, the only change being in regard to a commission on brooms, also mentioned by the appellee. With such conflict in the evidence, it was, surely, a question for the jury to determine, whether or not appellee agreed to share the losses for 1904 and 1905.

Appellant's agreement was a part of the original contract under which he was to sell the goods, and was in nowise a collateral agreement. *Timberlake* v. *Thayer,* 76 Miss., 23, So. Rep., 767.

Appellant and appellee could have agreed verbally, that in consideration of appellant's selling the goods, he should receive one-half of the net profits, and this is practically what they did, except that appellant was to suffer no reduction of the gross profits, save as mentioned in the contract.

It is a generally accepted rule, that community of profits implies a community of losses, and it follows, in a certain sense, that losses are nothing more than a diminution of profits. *Priest* v. *Chouteau*, 12 Mo. App., 252.

*Cassedy & Cassedy*, for appellee.

It is claimed by appellant that Badeau agreed that he would be responsible for one-half of the losses sustained by the appellant on all sales made by him, and that it sustained losses, which constitute its set-off. We claim that this is an agreement to answer for the debt of another and should be in writing to bind appellee under the statute of frauds. He was the agent of the Meyer-Bridges Company to make sale of the company's wares to customers on a credit, and the debt was due to the company from the customer, and in effect the contract was, "if he does not pay I will," and this is answering for the debt of another. The record will show, that in 1903, there was a written contract, and in 1904 and 1905 there was none in writing, unless it be held that a verbal agreement "to continue the old contract" which was dead by its own terms, constitutes a written contract. We take it that no court would so hold. The same reason which caused the statute to be enacted applies here, because it is a verbal contract to continue in force a former written contract. This would exclude all the evidence as to losses for 1904 and 1905, and there were no losses shown or attempted to be shown under the contract of 1903. The only evidence was that between January 1, 1903, and January 18, 1904, there were two debts of losses, one for $37.11 and the other $81.64. It was not shown when these were contracted or when lost; they might have been contracted and lost between

January 1, 1904, and January 18, 1904, and if so they came under the contract of 1904, and it was necessary for appellant to show this.

Argued orally by *F. H. Lotterhoss,* for appellant.

WHITFIELD, C. J., delivered the opinion of the court.

The stipulation by Badeau as to losses on customers with whom he dealt for the appellant, is not within the statute of frauds. His agreement was a part of the original contract under which he was to sell the goods, and was in no manner a collateral agreement. See *Timberlake* v. *Thayer,* 76 Miss., 76, 23 South., 767. Besides, it may be observed that it was not for the appellee to take one-half the gross profits, and then object to paying his half of the losses; the whole subject-matter being embraced in one single contract.

We think the proof of the losses is sufficiently clear to have been permitted to go to a jury. The thing to be ascertained was, not whether the customers were insolvent, but whether losses had been sustained; and, we think the evidence on this subject is competent, and of sufficient weight to have been submitted to a jury. The appellant should have been permitted to show losses by way of recoupment. The court, therefore, erred in giving the peremptory charge to find for the plaintiff.

*Judgment is reversed, and cause remanded.*